Billy Ray NORRIS, d/b/a M & B Custom
Counter Tops, Appellant,

v.

Thelma Lee WILLIAMS, Individually and
as Independent Executrix of Estate of
Paul Merrell Williams, Appellee.

No. 18131.

Court of Civil Appeals of Texas,
Fort Worth.

Sept. 27, 1979.

Rehearing Denied Oct. 25, 1979.

Law Offices of Jack Beech, and Ernest
May, Fort Worth, for appellant.

Johnson, Johnson & Rothfelder, and Joe
J. Johnson, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Paul Williams had been full partner with Billy Ray Norris prior to his death. They had done business as M & B Custom Counter Tops, hereinafter referred to as M & B. Upon the death of Williams his widow, Thelma Lee Williams, individually succeeded to her own interest in the partnership property, and as Independent Executrix and sole heir to her husband's estate, likewise succeeded to her husband's interest.

Prior to the institution of the Williams' suit against Norris there had been a contractual disposition of all interest in and to the property of the partnership formerly possessed by Williams and his wife and it was thereby transferred to Norris. This was by a written instrument of contract on February 4, 1975, to be later discussed.

Approximately four months prior to the February 4, 1975 contract, Williams had advanced $6,500.00 to M & B, which then executed a note payable to Williams on demand for $6,500.00. The makers of the note were M & B, Norris, and Williams. No mention of this note was made in the contract between Mrs. Williams and Norris on February 4, 1975. Indeed, it was approximately two years later that Mrs. Williams, after demand for payment, brought suit to recover on the contract.

Following trial before the court, without a jury, judgment was rendered for the full amount of $6,500.00 plus interest and attorney's fees. Norris appealed.

We affirm.

The material portion of the contract of February 4, 1975, provided:

"Seller (Mrs. Williams) agrees to sell her one-half interest . . . of the business heretofore known as M & B Counter Top Company . . . .. This sale shall include all business assets and liabilities of the seller in connection with said business. This sale shall include all supplies, equipment, tools, trade fixtures, licenses as required by the State, permits, accounts receivable and payable, and the good will of said business.

" . . .

"Purchaser (Norris) hereby agrees to assume and take over *all indebtedness of said business* and further agrees to indemnify and hold harmless the Seller from the claims of all creditors of said business." (Emphasis supplied.)

By points, Norris contends (1) error in ruling the note was comprehended by his contract to assume liabilities of the partnership; (2) error in holding defenses of payment and fraudulent concealment were not available because not pleaded; (3) error in holding suit could be maintained; (4) error in excluding, under provisions of the "dead man's" statute, testimony proffered by Norris that Williams had accepted the note to be paid out of only the partnership proceeds; and (5) error by rendering judgment for more than half the sum of the note.

There are no complications which might have been present had there been written articles of partnership, for there were none. We think it not disputed that had there been a third-person holder of the note, to whom the note had been negotiated, the liability of each individual maker would be clear. Had the holder brought suit on the note against both Norris and Williams, the obligation of each individual to pay would have been either joint or several, with the ultimate liability of each partner being exactly 50% of the total obligation because of contribution rights now recognized by statute Tex.Rev.Civ.Stat.Ann. art. 6132b (1970) "Texas Uniform Partnership Act", § 34, "Right of Partner to Contribution from Co-Partners after Dissolution." Furthermore, we think that if Mrs. Williams had only the right to sue Norris on the note, uncomplicated by the contract of February 4, 1975, her right of recovery against Norris could properly be only 50% of the total note obligation.

However, for her cause of action Mrs. Williams declared upon the provisions of the contract of February 4, 1975, to which the provisions of the note are merely ancillary. By the provisions of that contract all the indebtedness of M & B became the

obligation of Norris. Furthermore, Norris assumed the responsibility of Mrs. Williams' deceased husband for any indebtedness which might have been his earlier obligation as a partner, including the responsibility which might otherwise have been or become that of Mrs. Williams in her representative capacity as independent executrix.

The trial court filed findings of fact and conclusions of law, and they were supplemented further by requested findings. Questions relative thereto could only be such as would relate to the evidence and its sufficiency. As we view the same, of the findings made the only ones necessary to be noticed were (a) that no payment had been made to reduce the amount of the note obligation, and (b) that the note remained unpaid despite timely demand for payment of the whole obligation by reason of the parties' contract.

In the Norris pleading there was no plea of payment or entitlement to credit upon the amount of obligation of the note. Save for his general denial, Norris' answer presented the contention that the contract of February 4, 1975 encompassed as consideration the extinguishment of his liability on the note (a claim not made on appeal), and that there was no personal obligation on his part save from available surplus of the partnership funds (a claim made on appeal). On the latter the court excluded proffered proof when Williams objected on grounds that to admit it would violate the provisions of the "dead man's" statute, Tex. Rev.Civ.Stat.Ann. art. 3716 (1926), "(Evidence)—In actions by or against executors, etc."

■ Norris contends that the issue of payment or credit entitlement existed because it was tried by implied consent. Of course, in a case such as that under scrutiny, it is the obligation of a defendant to prove payment if he would contest the allegation that he is indebted as alleged. That burden never shifts. 44 Tex.Jur.2d 725, "Payment", § 64, "Burden of proof"; Tex. R.Civ.P. 95, "Pleas of Payment". Not only did the trial court express its opinion that

Norris was not entitled to rely on the affirmative defense of "payment" because it was not pleaded, it went further and made the factual finding that, if it was in error upon that opinion and that "payment" as a defense did become an issue because it had been tried without objection, it refused to find payment. Judged either by a test of pleading as a legal issue or by the evidence submitted, since the court refused to find on the issue of "payment" as Norris desired he must lose.

Norris could not have suffered harm. No reversible error was presented. Tex.R. Civ.P. 434, Texas' "Harmless Error Rule". The issue of payment was raised by the evidence, though not relied upon as a defense by Norris. If he was entitled to any finding, he got one which was against him. Even if the finding be considered material, by appropriate test of the record the finding was not contrary to the greater weight and preponderance of the evidence. There is no merit in Norris' contentions regarding payment.

■ We see no merit in Norris' contention relative to there having been fraudulent concealment by Mrs. Williams of her intent, on and after the time of executing the contract of February 4, 1975, to claim a right to be paid any note amount, let alone the full face amount it provided. There was nothing overt on the part of Mrs. Williams nor anyone acting for her to cause Norris to believe, if he did, that no demand would ever be made upon him to pay the note. Completely absent is any evidence that he was induced to make the contract because of a belief that no such demand would ever be made. Norris knew of the note he had executed some four months earlier, and he is to be presumed, in the absence of evidence to the contrary, to have been aware of his legal obligation created thereby. Further, absent any evidence of an expression to Mrs. Williams of unawareness on his part revealed at a time antecedent to February 4, 1975, and there was none, Norris could not show any breach of duty she owed to him which would affect his contract obligation.

The issues, narrowed by our discussion to this point, are (a) whether the contract of February 4, 1975, bound Norris under the rules of contract to pay the whole rather than merely one-half the obligation of the note, and (b) whether, because the note was never negotiated, Mrs. Williams could sue on the contract to pay its full face amount. The last stated premise is predicated upon Norris' belief that, without the existence of obligation to pay upon the note, there could be no binding obligation to pay on the contract.

Norris' counsel has found a most interesting case which would support his contention that the note, had it been the only item upon which suit was declared, was not an obligation upon which Williams could have effected any recovery had he been alive, or upon which Mrs. Williams, either in her individual or representative capacity as Williams' successor, could effect a recovery. The case is *Moore v. Denslow and Another*, 14 Conn. 235 (Conn. Supreme Court of Errors) (1841). We reject the case as authority. If it ever could have been the proper law to be applied in Texas, it could not have application to the instant case, even if it should be more narrowly considered as one upon the note rather than upon the later contract. This is so because of the provision of § 34 of Texas Uniform Partnership Act, *supra*. By the provisions thereof, as heretofore noticed, the maximum possible recovery would be only 50% of the total of the obligation of the note. This controls disposition of the Norris contention that there could not have been recovery of any amount on the note. It is overruled.

■ We proceed to the question, necessarily referable to the note and the obligations upon the note, of the Norris obligation arising out of his contract of February 4, 1975, for the whole amount of the obligation ($6,500.00 plus interest and attorney's fees). Mrs. Williams contends that by reason of the contract Norris became obligated to pay to her the entire indebtedness evidenced by note, rather than merely 50% thereof, as would have been the case had suit been upon the note.

There was consideration for the contract of February 4, 1975, and there is no contention of inadequacy or failure of consideration. The note, evidencing the principal amount of $6,500.00 as an indebtedness of the business of M & B, obligated the partnership. By the parties' contract, that partnership obligation was assumed by Norris as an individual. The partnership, had it continued in existence, and for purposes of the contract the parties treated it as a partnership business thus continued, would have owed the whole obligation. In other words, for purposes of the parties' contract the partnership, including its business and property, was treated as an entity though it had ceased as such for general purposes of the law. Because of this the parties are to be considered bound as the instrument of contract reflected their intent. That which had been the partnership note obligation was encompassed by the provisions of the contract relative to "all indebtedness of said business". The entire obligation of the note became that of Norris, as an individual, by the contract of February 4, 1975.

There is no reversible error presented on the appeal.

Judgment is affirmed.